THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JACQUELINE KING, Defendant-Appellant.

Third District   No. 3—86—0444

Opinion filed April 28, 1987.—Rehearing denied June 11, 1987.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

Edward Petka, State's Attorney, of Joliet (William L. Browers and Rita Kennedy Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE STOUDER delivered the opinion of the court:

The defendant, Jacqueline King, appeals from the judgment of the circuit court of Will County which resulted in her imprisonment for the offenses of armed violence, unlawful possession of a controlled substance, production of a Cannabis sativa plant, unlawful possession of a hypodermic syringe, and unlawful possession of a firearm. On appeal, King contends that: (1) the offense of armed violence (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2) cannot be predicated on the felony offense of unlawful possession of a controlled substance; (2) the State failed to prove that she was armed with a dangerous weapon for the purposes of the armed violence statute because the gun was not "on or about her person" nor was she "otherwise armed"; (3) the jury was improperly instructed through the use of a non-Illinois Pattern Jury Instruction (IPI) jury instruction as to the meaning of "armed with a dangerous weapon"; (4) she should not have been sentenced for both armed violence and the underlying felony of possession of a controlled substance; and (5) de-

spite trial counsel's failure to file a post-trial motion, this court should consider the issues raised on this appeal.

On June 24, 1983, nine officers of the Metropolitan Area Narcotics Squad (MANS) executed a valid search warrant at King's apartment. The officers identified themselves and they were admitted to the apartment without incident. King met the officers at the door wearing only a blanket wrapped around her and stated that she was about to take a bath. King's codefendant, Willie Green, was found sleeping in the south bedroom and a third person, Jason King, an eight- or nine-year-old boy, was found sleeping in a walk-in closet which had been converted into a bedroom. The officers seized a marijuana plant, which King admitted growing, from the kitchen windowsill. Upon entering the bedroom, the officers discovered a gun, a pink pill bottle containing two foil packets of heroin, and a syringe on a coffee table three feet from the bed. The gun was not loaded and the officers' search did not uncover any cartridges for which the weapon was chambered. King admitted that the heroin was hers, but both King and Green denied any knowledge of the gun. Neither King nor Green possessed a valid firearm owner's identification card.

At the instructions conference, the State tendered a non-IPI jury instruction which was eventually given over King's objection. The instruction, defining "armed with a dangerous weapon" for the purposes of King's trial, was as follows:

> "The mere presence of a pistol during the commission of the offense of unlawful possession of a controlled substance is sufficient for a person to be considered armed with a dangerous weapon. The person need not actually use the weapon in the commission of the offense of unlawful possession of a controlled substance."

The State's Attorney referred to the instruction and the concept of constructive possession during closing arguments and commented that actual possession was not required to substantiate the charge.

After jury deliberation, King was convicted on all counts. A sentencing hearing was conducted and the court sentenced King to seven years for the armed violence, three years for the unlawful possession of heroin, 364 days for the production of the Cannabis sativa plant, 364 days for the possession of the hypodermic syringe, and 364 days for the unlawful possession of the firearm.

Initially, King urges this court to consider the issues raised on this appeal notwithstanding defense counsel's failure to file a post-trial motion. King contends that this court should hear this appeal

on the following bases: first, that substantial error existed at trial and these errors may be noticed in accord with Supreme Court Rule 615(a) (87 Ill. 2d R. 615(a)); second, that the interests of justice require a review of this case because substantial defects existed in the jury instructions procedure in contravention of Supreme Court Rule 451(c) (87 Ill. 2d R. 451(c)); and third, that the failure to file the post-trial motion demonstrated ineffective assistance of counsel. In view of the issues involved in this case, we invoke jurisdiction under the "plain error" rule of Rule 615(a) and will not address King's alternative arguments concerning the instructions conference or ineffective assistance of counsel.

■ King asserts that the armed violence statute is not intended to apply to the offense of unlawful possession of a controlled substance where guilt is based upon constructive possession of the contraband. We find no merit in this argument because both the plain language of the statute and prior decisions of the Illinois courts are indicative of the opposite conclusion. The armed violence statute states:

> "A person commits armed violence when, while armed with a dangerous weapon, he commits *any* felony defined by Illinois Law." (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 38, par. 33A—2.)

Section 33A—1, the definitions used for purposes of the armed violence statute, specifically lists a pistol as a category I weapon which would bring the person committing the felony under the purview of the armed violence statute. Ill. Rev. Stat. 1985, ch. 38, par. 33A—1.

Additionally, Public Act 80—1099, which substantively changed the application of the armed violence statute, made a substantial change in the language of the statute. The amendment changed which felonies would be considered predicate offenses. It substituted the phrase "commits any felony defined by Illinois Law" for a list of specific sections which previously supplied the only basis for an armed violence charge. The legislature's express language cannot be overlooked as a definitive statement of intent to include any felonies as predicate offenses for the purposes of armed violence.

Despite this language, King cites two Illinois Supreme Court cases decided since the amendment of the statute for the proposition that the term "any felony" has been narrowed in its application. In *People v. Wisslead* (1983), 94 Ill. 2d 190, 446 N.E.2d 512, the court stated that armed violence could not be predicated on the offense of unlawful restraint. However, the decision in that case was based on the determination that constitutional assurances of proportionate

penalties and due process precluded the use of unlawful restraint as a predicate offense. In *Wisslead*, the court noted that unlawful restraint, by legislative determination, is a less serious offense than kidnaping. Unlawful restraint is a Class 4 felony, while the legislature deemed kidnaping to be a more serious, Class 2 felony. However, the introduction of a weapon into the facts of each offense yields disproportionate results. Unlawful restraint while armed with a revolver, *i.e.*, armed violence, is a Class X felony; yet kidnaping while armed with a revolver, *i.e.*, aggravated kidnaping, is only a Class 1 felony. The court held that the policy underlying constitutional provisions for proportionate penalties and due process would be violated if the penalty prescribed for an offense is not as great or greater than the penalty prescribed for a less serious offense. While this is sound reasoning, these constitutional concerns are not at issue in this case and, therefore, *Wisslead* is inapplicable.

King also cites *People v. Alejos* (1983), 97 Ill. 2d 502, 455 N.E.2d 48, to support her position. In *Alejos*, the court declined to apply the armed violence statute literally to voluntary manslaughter. The court noted that there was an improbability that the armed violence provision would deter those who commit voluntary manslaughter and that it would be difficult to understand what deterrent purpose the statute would serve in the situation where a person uses a weapon only in response to external provocation so strong that he does not properly deliberate or channel his response. Although this case, as *Wisslead*, provides a logical restriction on the application of the armed violence statute, we find that the facts necessary to implicate this exception are also nonexistent in this case.

The case which supports the application of the armed violence statute in this case, which was only summarily mentioned by King in a footnote, is *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027. *Lenoir* involved a factually similar situation. State and municipal officers, conducting a search of a house, found the defendant, a guest in the house, alone in a bedroom lying on a bed; beside him were two controlled substances and a loaded revolver. The *Lenoir* court also noted the *Wisslead* and *Alejos* cases and determined the holdings in those cases to be inapplicable. Therefore, in view of the statutory language and the inapplicability of the cases restricting the application of the armed violence statute, we hold that the possession of a controlled substance is a predicate offense within the meaning of the armed violence statute.

King further contends that even if possession of a controlled substance is a valid predicate offense, she was not "armed with a dan-

gerous weapon" as required by the statute. She asserts that the State's non-IPI instruction which stated that mere presence of the pistol was sufficient to find that King was "armed with a dangerous weapon" misstates the law and should not have been given.

The armed violence statute states:

> "A person is considered armed with a dangerous weapon for the purposes of this Article, when he carries on or about his person or is otherwise armed with a category I or category II weapon." (Ill. Rev. Stat. 1985, ch. 38, par. 33A—1(a).)

The issue here is whether the presence of the unloaded pistol on the table constitutes carrying a weapon on or about the person or being "otherwise armed" for purposes of the statute. King contends that the first sentence of the instruction makes armed violence an absolute-liability offense in the sense that it makes possession and knowledge of a weapon irrelevant. King believes that she was severely prejudiced in that the jury was precluded from considering the defense theory that she had no knowledge of and did not possess the gun. The State asserts that its instruction correctly states the law in Illinois and cites the following language from the previously discussed case of *People v. Alejos*:

> "The two essential elements of armed violence are being armed with a dangerous weapon and committing a felony, and while they must coincide, the mere presence of a weapon of the proscribed character is sufficient; the defendant need not actually use the weapon in the commission of the felony." 97 Ill. 2d 502, 508, 455 N.E.2d 48, 50.

However, the phrase "mere presence," in this context, is used only in opposition to the requirement that the weapon be actually used in the commission of the felony. The purpose of the armed violence statute is to deter felons from using dangerous weapons. The availability of a dangerous weapon enhances the risk that any felony will have deadly consequences. Consequently, the availability of the weapon is viewed as an aggravating factor which enhances the severity of the underlying felony and upgrades the punishment available for it to Class X standards. *People v. Alejos* (1983), 97 Ill. 2d 502, 508, 455 N.E.2d 48, 50.

■■ ■ This can only lead to the conclusion that the use of this non-IPI instruction did prejudice King. The State's tendered instruction was misleading and the State's theory, as set out in their instruction, was skewed because it equated the definition of presence of the weapon with the mere physical existence of the weapon. Taken to its logical conclusion, a defendant could be convicted of

armed violence, in an otherwise factually similar situation as is present in this case, simply because a weapon was located anywhere in the home. This is a result not intended by the legislature. Presence of the weapon, for purposes of the armed violence statute, denotes not only physical existence of the weapon, but characterizes the relationship between the weapon and the person. Although the statute does not require the use or even the threatened use of the weapon, it does require that the person carry the weapon on or about his person or be otherwise armed. This requirement emphasizes the quality of the relationship between the person and the weapon or the potential hazard which exists when a person is armed while committing a felony. The mere physical existence of the weapon without knowledge or control, including immediate access to the weapon, is not within the meaning of the armed violence statute.

This concept is crystallized by reviewing *People v. Lenoir* (1984), 125 Ill. App. 3d 260, 465 N.E.2d 1027. In *Lenoir*, the evidence indicated that the defendant was found lying on the bed with two controlled substances and a loaded revolver beside him on the bed. The court held that this was sufficient to warrant an inference that defendant knew about or was in possession of the items found beside him. Notwithstanding the fact that the weapon was not used, the evidence was sufficient to support the armed violence charge. Our holding today also requires that we examine the holding in *People v. Zambetta* (1985), 132 Ill. App. 3d 740, 477 N.E.2d 821. In *Zambetta*, the evidence showed that the defendant knew of the revolver's location in the glove compartment and constructively possessed it. At the time of the drug sale involved in the case, he was seated in the driver's seat only a few feet away from the glove compartment, the glove compartment was unlocked, and the revolver was fully loaded. The court held that this evidence was sufficient to support the armed violence conviction. We find this case to be of doubtful persuasion because it based its decision on *People v. Smith* (1978), 71 Ill. 2d 95, 374 N.E.2d 472. *Smith* was an unlawful use of weapons case which held that a revolver, in a locked glove compartment, was "immediately accessible" to the defendant, who was located outside his vehicle at the time of arrest. Although the basic legal concepts are different in an armed violence situation versus an unlawful possession scenario, the *Zambetta* court used the finding of "immediately accessible" and the theory of constructive possession to support its position. This reasoning is simply inapposite to carry out the legislative intent of the armed violence statute.

So although the weapon need not be utilized in the commission

of the felony, the mere physical existence of a weapon in any location is insufficient to support an armed violence charge. There must be that relationship between the weapon and the defendant or that potential hazard to support an armed violence conviction and neither was existent in this case.

As a matter of law, the State was unable to prove that King was armed with a dangerous weapon for purposes of the armed violence statute and the use of the non-IPI instruction only managed to mislead the jury by misstating the law. The Illinois Pattern Jury Instructions in criminal cases which define armed violence and which enumerate the issues for a conviction for armed violence provide sufficient clarity with which to instruct a jury. (Illinois Pattern Jury Instructions, Criminal, Nos. 11.19, 11.20 (2d ed. 1981).) Therefore, we reverse King's conviction for armed violence.

The final issue we address is whether King could be sentenced for both armed violence and the underlying felony. Both parties agree that the dictates of *People v. Payne* (1983), 98 Ill. 2d 45, 456 N.E.2d 44, prohibit the trial court from imposing sentences for both armed violence and the underlying felony upon which the armed violence charge is based. However, because this case will be remanded for resentencing on the basis of our prior determination, vacating King's sentence for the unlawful possession of a controlled substance is unnecessary.

For the foregoing reasons, the judgment of the circuit court of Will County is reversed as to the armed violence conviction and the case is remanded for resentencing.

Reversed and remanded.

BARRY, P.J., and SCOTT, J., concur.