(No. 87103.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, v. EARL SMITH, Appellant.

*Opinion filed May 25, 2000.—Rehearing denied July 3, 2000.*

RATHJE, J., specially concurring.
MILLER and McMORROW, JJ., joined by FREEMAN, J., concurring in part and dissenting in part.

Robert Agostinelli, Deputy Defender, and Peter A. Carusona and Donna K. Kelly, Assistant Defenders, of the Office of the State Appellate Defender, of Ottawa, for appellant.

James E. Ryan, Attorney General, of Springfield, and Michael Kick, State's Attorney, of Kankakee (Joel D. Bertocchi, Solicitor General, and William L. Browers and Russell K. Benton, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE HEIPLE delivered the opinion of the court:

Defendant Earl Smith appeals his conviction for armed violence. For the following reasons, we reverse the conviction and remand for further proceedings.

At trial in the circuit court of Kankakee County, police officers testified that they executed a search warrant at defendant's apartment on June 22, 1994. As police approached the apartment building, they saw defendant drop a handgun out of the apartment window. The gun slid down the roof of the building's porch and onto the ground, where police recovered it. The gun was not loaded. In the living room of the apartment, police found 2.5 grams of cocaine behind a couch and 2.1 grams of cannabis on a coffee table. Defendant was found in the bedroom near a window, the screen of which had been pushed outward. No other persons were found in the apartment, and no ammunition was discovered.

At the close of the evidence, the court found defendant guilty of armed violence, unlawful possession of a controlled substance, unlawful possession of a weapon by a felon, and unlawful possession of cannabis. The court found defendant not guilty of an additional charge of unlawful possession of a controlled substance with intent to deliver. The court vacated the conviction for unlawful possession of a controlled substance because it served as the underlying felony for armed violence. See *People v.*

*Donaldson*, 91 Ill. 2d 164, 170 (1982) (holding that convictions for both armed violence and an underlying felony cannot stand where a single physical act is the basis for both charges). The court sentenced defendant to concurrent prison terms of nine years for armed violence, two years for unlawful possession of a weapon by a felon, and time served for unlawful possession of cannabis.

The appellate court affirmed, with one justice dissenting. No. 3—96—0335 (unpublished order under Supreme Court Rule 23). The majority held that defendant could be found guilty of armed violence despite the fact that he dropped the gun out the window before police entered the apartment. The majority also held that the evidence at trial was sufficient to convict defendant of unlawful possession of a controlled substance, the predicate felony for defendant's armed violence conviction. The dissent argued that defendant was not guilty of armed violence because he disposed of the unloaded gun as soon as he saw the police. This court allowed defendant's petition for leave to appeal.

Defendant contends that the trial and appellate courts erred in finding that he committed the offense of armed violence. Because the facts are not in dispute, defendant's guilt is a question of law, which we review *de novo*. A person commits armed violence when, while armed with a dangerous weapon, he commits any felony defined by Illinois law. 720 ILCS 5/33A—2 (West 1992). A person is considered armed with a dangerous weapon when he or she carries on or about his person or is otherwise armed with a Category I or Category II weapon. 720 ILCS 5/33A—1(a) (West 1992). A handgun is a Category I weapon. 720 ILCS 5/33A—1(b) (West 1992).

In construing the meaning of the phrase "otherwise armed" as used in the armed violence statute, this court

has emphasized that the statute's purpose is to deter felons from using dangerous weapons, thereby minimizing the deadly consequences which may result when a felony victim resists. *People v. Condon*, 148 Ill. 2d 96, 109 (1992). In *Condon*, we found that this deterrent purpose was not served and so reversed the defendant's armed violence conviction. As in the instant case, the police in *Condon* executed a search warrant to seize illegal drugs located in the defendant's residence. When police entered the residence, Condon was standing in the apartment with no weapon on or about his person. Although numerous guns were found elsewhere in the residence, we held that Condon's conviction for armed violence could not be sustained because he did not have " 'immediate access to' or 'timely control over' a weapon when the police entered." *Condon*, 148 Ill. 2d at 110.

Conversely, in *People v. Harre*, 155 Ill. 2d 392 (1993), we affirmed the armed violence conviction of a defendant who was apprehended by police during a drug raid as he made a move toward his car, which contained two guns. In our opinion in *Harre*, we noted that at the time police confronted the defendant in *Condon*, Condon did not have the "intent and capability to maintain control and possession" of the weapons, while Harre clearly did. *Harre*, 155 Ill. 2d at 399-401.

Applying these principles to the facts of the instant case, we conclude that defendant did not commit the offense of armed violence. Defendant did not have " 'immediate access to' or 'timely control over' a weapon when the police entered" (*Condon*, 148 Ill. 2d at 110), because he dropped the gun out of the window as soon as he became aware that police were approaching. For this same reason, defendant also did not have the "intent and capability to maintain control and possession" of the weapon, as this court has required. *Harre*, 155 Ill. 2d at 399-401. Permitting an armed violence conviction to

stand against a felon such as defendant, who exhibited no propensity to violence and dropped the unloaded gun out of the window as the police approached his apartment to search for drugs, would not serve, but rather would frustrate, the statute's purpose of deterring criminals from involving themselves and others in potentially deadly situations.

Defendant also contends that the evidence was insufficient to convict him of unlawful possession of a controlled substance because the State did not prove that he was aware of the drugs found in his living room. This court has held, however, that the mere presence of illegal drugs on premises which are under the control of the defendant gives rise to an inference of knowledge and possession sufficient to sustain a conviction absent other factors which might create a reasonable doubt as to the defendant's guilt. *People v. Nettles*, 23 Ill. 2d 306, 308-09 (1961). We believe that under the circumstances of the instant case, the trier of fact was entitled to rely on this inference in finding that defendant had knowledge and possession of the drugs.

The judgment of the appellate court is affirmed in part and reversed in part. Defendant's conviction for armed violence is reversed, his conviction for unlawful possession of a controlled substance is reinstated, and the cause is remanded to the circuit court for further proceedings.

*Appellate court judgment reversed in part*
*and affirmed in part;*
*circuit court judgment reversed in part*
*and affirmed in part;*
*cause remanded.*


JUSTICE RATHJE, specially concurring:

Although the majority correctly concludes that defendant's actions did not constitute armed violence, I believe that this case justifies a fuller consideration of

the public policy concerns that inspired the armed violence statute.

Under the Criminal Code of 1961, a person commits armed violence when he is armed with a dangerous weapon and commits any felony under Illinois law. 720 ILCS 5/33A—2 (West 1992). A person is considered "armed with a dangerous weapon" if he "carries on or about his person or is otherwise armed with a category I or category II weapon." 720 ILCS 5/33A—1(a) (West 1992). The two categories include various firearms, knives, and bludgeoning instruments. 720 ILCS 5/33A—1(b), (c) (West 1992).

The purpose of the armed violence statute is to deter felons from using weapons when they commit felonies. *People v. Lombardi*, 184 Ill. 2d 462, 469 (1998); *People v. Condon*, 148 Ill. 2d 96, 109 (1992). The statute is aimed at the problem that arises when "[a] felon with a weapon at his or her disposal is forced to make a spontaneous and often instantaneous decision to kill without time to reflect on the use of such deadly force." *Condon*, 148 Ill. 2d at 109. The legislature created the crime of armed violence to deter criminals from having a weapon at their disposal to allow them such a choice. *Condon*, 148 Ill. 2d at 109-10.

Illinois courts have continually determined that, because the purpose of the statute is to deter felons from making the bad decision of using a dangerous weapon while committing their felony, the felon must have timely control over or immediate access to that weapon. *People v. Harre*, 155 Ill. 2d 392, 396 (1993); *Condon*, 148 Ill. 2d at 110; *People v. Orsby*, 286 Ill. App. 3d 142, 149-50 (1996). The relationship between the defendant and the weapon is the most important consideration in determining whether the defendant is armed. *People v. Hoyt*, 180 Ill. App. 3d 863, 867 (1989); *People v. King*, 155 Ill. App. 3d 363, 370 (1987). "Presence of the weapon, for

purposes of the armed violence statute, denotes not only physical existence of the weapon, but characterizes the relationship between the weapon and the person." *King*, 155 Ill. App. 3d at 369.[1]

In this case, *none* of the dangers that inspired the armed violence statute are present. Defendant did not possess or have immediate access to a dangerous weapon when the police arrived. In fact, the police did not find a single weapon or round of ammunition in defendant's apartment. Consequently, defendant could have neither used deadly force nor given the impression that he might use deadly force. The worst that can be said is that, shortly before the police arrived, defendant momentarily held an unloaded gun for which no ammunition was readily available. More importantly, this case vindicates *all* of the public policy goals that inspired the armed violence statute. Defendant consciously chose *not* to be in possession of a dangerous weapon, thereby *eliminating the possibility* of a spontaneous and tragic decision to kill. Given these facts, it would be absurd to affirm defendant's conviction, as that decision would send the regrettable message that defendant would have been no worse off had he not only *kept* the gun but also loaded it.

In defining defendant's actions as armed violence, the State's argument defies the very purpose of the armed violence statute. It is clear that the legislature created the crime of armed violence so that, when a felon planned his felony, he would think twice about bringing a weapon and endangering anyone who might get in his way. The armed violence statute served its deterrent purpose in this case and, therefore, defendant's conviction should be reversed.

---

[1]Contrary to the majority's suggestion, these cases do not require an officer to observe the presence of the weapon in defendant's hand.

416

JUSTICE MILLER, concurring in part and dissenting in part:

I agree with the majority that the evidence is sufficient to sustain the defendant's conviction for unlawful possession of a controlled substance. I do not agree, however, with the majority's separate conclusion that the State failed to prove the defendant guilty of armed violence. In my view, the evidence firmly establishes his commission of that offense as well.

A person commits armed violence when, while armed with a dangerous weapon, he commits any felony under Illinois law. 720 ILCS 5/33A—2 (West 1992). A handgun, like the one in the defendant's possession moments before his arrest, qualifies as a dangerous weapon under the armed violence statute. 720 ILCS 5/33A—1(b) (West 1992).

The majority reverses the defendant's armed violence conviction, concluding that the defendant was not guilty of that offense because he disposed of his gun when he saw the police approach. In reaching this conclusion, the majority erroneously assumes that the determinative element here is whether the defendant was armed at the precise moment of his arrest. *People v. Condon*, 148 Ill. 2d 96 (1992), on which the majority relies, is fundamentally different from the present case. One question in *Condon* was whether the defendant's presence in a house containing numerous weapons could sustain a conviction for armed violence, and the court concluded that it could not. The defendant in that case was arrested, unarmed, by police in the kitchen of the residence, which was owned by the defendant's brother. A subsequent search turned up more than a dozen firearms throughout the house; none of the guns, however, were located in the kitchen, where the defendant was found. The predicate felonies for the defendant's armed violence charge alleged the delivery and possession of cocaine. This court

noted that there was no evidence that the defendant used or displayed a gun during the delivery of the drug. The State argued, however, that the defendant's presence in the house, among the weapons, while committing the possessory offense was sufficient to establish the armed violence charge. This court rejected the State's contention:

"Were we to find the presence of guns in the house with the cocaine enough to violate the armed violence statute, such a finding would be contrary to the purpose for which the statute was enacted. Rather, we find that defendant would have had to carry a weapon on his person or alternatively to have had 'immediate access to' or 'timely control over' a weapon when the police entered to have been 'otherwise armed' for purposes of the statute." *Condon*, 148 Ill. 2d at 110.

A later decision, *People v. Harre*, 155 Ill. 2d 392 (1993), makes clear that a defendant may be guilty of armed violence even though he is not in actual physical possession of a weapon at the exact moment of his arrest. The defendant in *Harre* was arrested while he was standing next to the half-open window of an automobile, which held two guns on its front seat. This court found *Condon* distinguishable and concluded that the defendant was guilty of armed violence, predicated on an underlying drug offense. The court stated:

"[T]he determination of whether a defendant is armed is not made at the moment of arrest. Rather, armed violence occurs if a defendant commits a felony while having on or *about* his person a dangerous weapon or if a defendant is *otherwise* armed. We would completely eviscerate the deterrent purpose of the armed violence statute if we were to require police officers to wait to announce their presence and effect an arrest until a defendant's access and control over a readily available weapon had ripened into the temptation to take actual physical possession, which would invite rather than deter violence." (Emphasis in original.) *Harre*, 155 Ill. 2d at 401.

In the case at bar, the defendant threw away his

weapon only after he became aware of the officers' approach. The evidence thus showed that the present defendant, unlike the defendant in *Condon*, had immediate access to or timely control over a weapon immediately before his arrest. Under these circumstances, the defendant's conviction for armed violence should be affirmed.

The majority further suggests, however, that a conviction for armed violence would be inconsistent with the defendant's peaceful abandonment of his gun. I do not agree. The defendant's decision to throw away the weapon may be considered in mitigation at sentencing; it does not alter the nature of his offense. The mere possession of a weapon at the time of the commission of the underlying offense is sufficient to sustain a conviction for armed violence, and a defendant may be guilty of armed violence even though he did not use the weapon. As this court explained in *People v. Alejos*, 97 Ill. 2d 502, 508 (1983):

> "The two essential elements of armed violence are being armed with a dangerous weapon and committing a felony, and while they must coincide, the mere presence of a weapon of the proscribed character is sufficient; the defendant need not actually use the weapon in the commission of the felony (*People v. Haron* (1981), 85 Ill. 2d 261, 266-68). The presence of a weapon enhances the danger that any felony that is committed will have deadly consequences should the victim offer resistance."

The same potential danger existed here, at least until the defendant decided to abandon his weapon. There was in this case the necessary convergence between the defendant's possession of a dangerous weapon and his commission of the predicate felony, and I would therefore conclude that the evidence is sufficient to sustain the defendant's conviction for armed violence.

JUSTICES FREEMAN and McMORROW join in this partial concurrence and partial dissent.

JUSTICE McMORROW, also concurring in part and dissenting in part:

I join in Justice Miller's partial concurrence and partial dissent. I write separately to emphasize my disagreement with the majority's decision to overrule, *sub silentio*, *People v. Harre*, 155 Ill. 2d 392 (1993). In *Harre*, police officers were positioned in a rural house situated at the end of a long, gated driveway, waiting for the defendant to arrive. Two officers saw a car approach and turn into the driveway. The car stopped at the closed gate, and the officers heard a car door open and close and the sound of the gate being opened. The car then proceeded up the lane slowly the rest of the way to the house. As the car approached the house, the officers observed the defendant riding on the passenger-side hood of the car. The defendant jumped down off the hood and took two steps towards the rear of the car until he was next to the half-opened window of the passenger-side door. An officer, with weapon drawn, then identified himself and instructed defendant to return to the hood of the car and place his hands there. At the same time another officer, also with weapon drawn, directed the driver to step out of the car. A .22-caliber pistol and .22-caliber rifle were recovered from the front seat of the car. A key recovered from the defendant's pants pocket opened the trunk, from which two garbage bags of cannabis were seized. *Harre*, 155 Ill. 2d at 394-95.

This court in *Harre* determined that the defendant was guilty of armed violence. This result was based on two conclusions. First, the evidence showed that the defendant was "armed," for purposes of the armed violence statute, based on the police officers' lay opinion testimony that the weapons on the front seat of the car were within the defendant's immediate reach as the defendant stood next to the car door and partially opened car window. Second, and more important for the purposes of this case,

the court determined that the defendant was guilty of armed violence because *"the determination of whether a defendant is armed is not made at the moment of arrest."* (Emphasis added.) *Harre*, 155 Ill. 2d at 401. As the court in *Harre* explained:

> "Nor was there evidence in *Condon* that the defendant had displayed or used a gun during any drug delivery. (*Condon*, 148 Ill. 2d at 110.) However, the evidence here, although circumstantial, clearly supported the inference that *defendant had moments before his apprehension been riding in the car on his way to a drug delivery with a weapon inches from his grasp.* Such circumstantial evidence was not so clearly unreasonable, improbable, or unsatisfactory that no rational trier of fact could have found beyond a reasonable doubt that defendant had immediate access to or timely control over such weapons while riding in the car enroute to the delivery of the cannabis. (See *Collins*, 106 Ill. 2d 237.) Thus again in contrast to *Condon*, the evidence supported the jury's finding that defendant had immediate access to and control over the weapons during the course of the underlying felony." (Emphasis added.) *Harre*, 155 Ill. 2d at 400.

The majority errs, in the instant case, when it emphasizes the fact that the defendant was not armed at the time of his arrest. As *Harre*, which postdates *Condon*, makes absolutely clear, the only question that must be answered under the armed violence statute is whether the defendant was armed at the time of the commission of the felony. In the case at bar, the police officer's testimony that he saw the defendant throwing the gun out of the window clearly established that the defendant was armed during the commission of the possession offense. As in *Harre*, the defendant in this case had, "moments before his apprehension," been armed with a handgun and in possession of a controlled substance. The majority's decision is thus at odds with, and indeed overrules, *Harre*.

Although *Harre* clearly resolves the present case, one

might still maintain, as the majority does, that on policy grounds a conviction for armed violence should not stand where the defendant has thrown the weapon away before the police make the arrest. I do not find this argument persuasive. The purpose of the armed violence statute is to reduce the risk of violence during the commission of felony offenses. The statute's purpose is not limited to deterring violence during an offender's arrest. Indeed, by focusing exclusively on the time of arrest, as the majority does, the majority concludes that it was acceptable, under the law, that defendant was armed and in felony possession of a controlled substance prior to his arrest. That result is obviously counter to the armed violence statute's purpose. For these reasons, I respectfully dissent.

JUSTICES MILLER and FREEMAN join in this partial concurrence and partial dissent.